IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **BARBIE W. GLENN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:06-CV-2001-KOB** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The Claimant, Barbie W. Glenn, filed applications for Disability Insurance Benefits on January 27, 2004 and Supplemental Security Income payments on March 22, 2004, alleging disability as a result of the following conditions caused by a motor vehicle accident on November 23, 2000: ankle and foot injuries, arthritis in her foot, further required surgery, pain, and depression.  The Commissioner denied the claims.  The Claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  The Claimant had previously protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments on October 22, 2001, with an alleged onset date of November 23, 2000.  That claim was denied by an ALJ decision on November 17, 2003.  The Claimant filed a request for review which was denied by the Appeals Council on November 5, 2004.  The Claimant did not pursue any further appeal of the earlier application.

The ALJ for the most recent 2004 applications held a hearing on February 17, 2005.  At

the hearing, the Claimant requested that the ALJ reopen the previous decision. The ALJ found that no evidence had been submitted to show that the previous decision was in error and that the previous ALJ decision dated November 17, 2003, was not to be reopened and stands as a final and binding adjudication as to the issue of disability on or before November 17, 2003. In a decision dated June 21, 2005, the ALJ found that the Claimant was not disabled within the meaning of the Social Security Act since the November 2003 decision, and, therefore, was not eligible for Disability Insurance Benefits and Supplemental Security Income Payments. On August 1, 2006, the Appeals Council denied the Claimant's request for review. The Claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the decision of the Commissioner will be AFFIRMED.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the

> economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but it must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III. Facts

The Claimant was thirty-two years old at the time of the administrative hearing and has a twelfth grade education. (R. 82). Her past work experience includes employment as a certified nurse assistant, cashier, and pre-ticker in a jeans manufacturing company. (R. 82). According to the Claimant, she became disabled on November 23, 2000 as a result of ankle and foot injuries sustained in a motor vehicle accident, arthritis in her foot, further required surgery, pain, and depression. (R. 106, 107, 111, 298). The Claimant is currently unemployed. (R. 78).

The Claimant testified that she lives in a mobile home with her husband and two children who are ten and thirteen years old. (R. 95, 294). Claimant is able to read, write, and count money, and indicated she has a valid driver's license. (R. 294). Claimant testified she takes her children to school daily. (R. 95). Claimant noted that, due to right foot and ankle pain and swelling, she has to sit and elevate her leg every two hours. (R. 288). Claimant stated she was able to walk for ten minutes at a time, but she was unable to walk barefoot. (R. 300). Claimant reported she could stand for a maximum of ten minutes and sit without any problems. (R. 299, 300). Claimant rated her pain as "6 to 7" on a ten-point scale, and noted that she only takes over-the-counter medications such as Tylenol, Advil, and Aleve, and does not take any prescribed pain medication. (R. 298). Claimant reported she last saw Jeffery C. Davis, M.D., her orthopedist, in 2003 and has not had any further treatment since the hearing on her previous applications in September 2003. (R. 296). Claimant reported she is depressed a lot, but admitted she had not sought any treatment for her depression. (R. 298).

The record reveals the Claimant was involved in a motor vehicle accident in November 2000 and sustained a comminuted right distal tibia fracture, comminuted left distal radius

fracture, Grade II to III liver laceration, comminuted right calcaneus fracture, and open right knee laceration. (R. 169-171). The Claimant recovered from those injuries and did not receive any additional treatment for the next three-and-a-half years. On April 27, 2004, the Claimant reported to Will R. Crouch, M.D., during a consultative evaluation, that she continued to have severe pain in her right ankle and foot and was unable to walk on hard surfaces. (R. 214). Claimant reported she was not taking any prescription medications, and she had not seen her treating physician, Dr. Davis, in about two years. (R. 214). Dr. Crouch's examination of the right ankle and foot revealed multiple scars, and Claimant complained of tenderness on palpation over the ankle and foot and over the scars. (R. 215). Claimant had minimal range of motion with ten degrees plantar and ten degrees dorsiflexion of the right foot, and she had a trace of edema over the right foot and ankle. (R. 215). Claimant walked without an assistive device, although she brought a four-prong cane with her. (R. 215). Claimant was not able to heel and toe walk or squat and arise. (R. 215). Claimant did get on and off the examining table without assistance. (R. 215). Dr. Crouch's diagnoses were status post motor vehicle accident with severe fracture of the right ankle and foot, as well as left wrist, requiring open reduction and internal fixation, and continuing pain and hypersensitivity of the right ankle and foot. (R. 214).

At the request of the ALJ, Robert A. Sparks, III, M.D., performed a consultative orthopedic evaluation on March 21, 2005. (R. 262). Dr. Sparks noted all of the Claimant's fractures had healed. (R. 262). The Claimant admitted her left wrist functioned normally, but she stated that she continued to have severe pain in her right foot and ankle when she was up on the extremity for any length of time. (R. 263). Claimant reported that Dr. Davis told her that she must elevate her foot multiple times during the day, which she continued to do every two hours.

(R. 263).  Although Claimant alleges that she needs to elevate her foot above her heart level, no evidence demonstrates that any physician specified a level of elevation.  Claimant was unable to walk barefoot mainly because of increased sensitivity in the skin of the heel, and she also had limited ankle motion.  (R. 263).  Claimant reported daily, constant pain, but she had become able to treat this pain with over-the-counter pain medications and was no longer taking prescription pain pills.  (R. 263).  Claimant used a quad cane in her right hand, but she did not use the cane inside her house.  (R. 263).  When she went outside, Claimant reported that she always had the cane with her.  (R. 263).  The Claimant's heel pad was deformed and very sensitive, and palpation caused discomfort.  (R. 263).  The subtalar joint had no motion, and the ankle joint had very limited motion.  (R. 263).  The Claimant did not have a lot of swelling, but she reported her foot would swell as the day went on.  (R. 263).  X-rays of the right distal tibia, ankle, foot, and heel revealed a well-healed fracture of the distal tibial articular surface (tibial plafond) and the pins used as internal fixation devices were still in place.  (R. 262).  A crush type fracture of the os calcis was also apparent, and the plate and screws used to fix that fracture were still in place.  (R. 262).  The joint space of the tibiotalar joint (ankle joint) was markedly decreased, and the subtalar joint was obliterated and may be surgically fused.  The os calcis was deformed, and the articular surface of the calcaneus in the calcaneocuboid joint and the talonavicular joint were not involved.  (R. 262).

 Dr. Sparks opined that Claimant could probably tolerate sitting with her foot propped up in a chair, but he did not think she would tolerate sitting with her right foot hanging down.  (R. 264).  Dr. Sparks completed a Medical Source Opinion (Physical) form on March 22, 2005, in which he indicated the Claimant had the ability to stand for two hours at one time and for four

hours total during an eight hour day, could walk for one hour at a time and for four hours total during an eight hour day, and did not have any limitations in her ability to sit. (R. 267). The Claimant could constantly lift and carry ten pounds, frequently lift and carry twenty pounds, and occasionally lift and carry thirty pounds. (R. 267). Claimant could never push/pull with her right leg, climb, stoop, kneel, crouch, or crawl, or work in a high exposed place. (R. 268) Claimant could occasionally balance and frequently drive automotive equipment. (R. 269). Claimant could constantly push or pull with her right arm, left arm, and left leg, handle, finger, feel, talk, hear, reach overhead, and be around extreme cold, heat, wetness/humidity, vibration, fumes, and moving mechanical parts. (R. 268).

Because the November 17, 2003 decision stands as a final and binding adjudication, the ALJ for the 2004 claim did not consider any evidence prior to November 17, 2003. The ALJ found that the medical evidence indicated that the Claimant does have some pain and limitations due to her lower extremity impairment. (R. 26). Although the record indicates that the Claimant had multiple injuries resulting from a motor vehicle accident in November 2000, the ALJ noted that the Claimant had not sought any additional medical treatment and does not take the appropriately prescribed medications. (R. 27). In addition, the Claimant did not seek medical treatment or medication for her alleged depression. (R. 25). Therefore, the ALJ concluded that the Claimant's impairments were severe, but not severe enough to meet one of the impairments listed in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 25). The ALJ stated that he was persuaded by the fact that no evidence exists of more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (R. 25).

The ALJ next assessed whether the Claimant retained the residual functioning capacity ("RFC") to perform the requirements of her past relevant work. (R. 27). Based on the medical examinations and opinions, symptoms, and controlling case law of the Eleventh Circuit, the ALJ found that the Claimant would not be able to perform the requirements of her past work, but she would be able to work. (R. 27, 28). The ALJ stated that the Claimant retained the RFC to perform sedentary work activity. (R. 28). Any pain she would experience would be less than moderately severe, but she would be unable to operate foot controls with her right foot. (R. 29). She would have moderate or less mental restrictions in all areas. (R. 29). The vocational expert ("VE") testified that the Claimant's past work as a certified nurse assistant was medium in exertional requirements and semiskilled, and a cashier was light in exertional requirements and unskilled. (R. 291). The VE also testified that due to having to elevate her leg, she would not be able to perform any past relevant work. (R. 306).

During the Claimant's hearing, the ALJ posed a hypothetical situation to the VE based on his findings of the Claimant's RFC. (R. 305, 307). The VE consented that the Claimant would be unable to work if she had to elevate her leg to the testified level (above her heart). (R. 307). Although the VE testified that this extreme height would preclude her from working, the VE also stated that the Claimant's need to elevate her leg would not prevent her from working. (R. 308). The VE stated that, based on the RFC described by the ALJ, "the Claimant could work as an order clerk existing at 550 in the state economy and 20,000 in the national economy and as an inventory clerk existing at 500 in the state economy and 29,000 in the national economy." (R. 306).

## IV. Issues Presented

In this appeal, the Claimant argues that the Commissioner erred in four ways. First, the Claimant alleges that the ALJ failed to support his decision with substantial medical evidence. Second, the Claimant alleges that the ALJ failed to pose a proper hypothetical situation to the VE. Third, the Claimant alleges that the ALJ failed to fully and fairly develop the record. Fourth, the Claimant alleges that the ALJ failed to properly apply the Eleventh Circuit's three-part pain standard.

## V. Discussion

### A. Consideration of Substantial Medical Evidence

The Claimant alleges that the ALJ's RFC finding is not supported by substantial medical evidence because he did not make any specific findings regarding Claimant's declaration that she needs to elevate her leg above the level of her heart. The Claimant did not identify any evidence in the record indicating that Dr. Davis, Claimant's treating physician, or any other physician prescribed a specific height to which Claimant must elevate her leg. Moreover, the court is unable to find any such evidence after thoroughly searching the record. Even if such a requirement could be found in one of Dr. Davis's reports, the ALJ properly omitted Dr. Davis's examinations of Claimant and did not consider them in his decision because *res judicata* barred their admission.

The law in this circuit is well established that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of a claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). An ALJ's failure to give

considerable weight to the treating physician's opinion is a reversible error. *Broughton*, 776 F.2d at 961. However, the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). The Federal Regulations define a "treating physician" as one with whom the claimant has an "ongoing treatment relationship" or someone the claimant "sees or ha[s] seen with frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions." 20 C.F.R. § 404.1502. While the ALJ must consider all medical opinions when making a disability determination, he does not have to accord an opinion arising out of a single consultative examination the special deference he must give to a treating physician's opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Claimant in this case alleges that she must elevate her leg above the level of her heart, and that the ALJ only accepted her testimony in part (that she must elevate her leg). In addition, Claimant alleges that the ALJ's decision is not supported by substantial medical evidence because he fails to make explicit findings regarding the limitation of elevating her leg. Although the ALJ did not rely on Dr. Davis, he did properly discredit Dr. Davis's evaluation of the Claimant. Claimant did not see Dr. Davis after the initial 2003 decision, which the ALJ decided would not be reopened. A court may reopen a prior proceeding to correct an error that appears on the face of the evidence that was considered when the decision was made. 20 C.F.R. § 404.988(c)(8). The ALJ clearly stated that the prior decision was not in error and that no new evidence had been presented. (R. 22). Therefore, the current ALJ determined that the prior decision would stand as a final and binding adjudication as to the issue of disability on or before November 17, 2003. (R. 22). Because the prior decision would not be reopened, *res judicata*

bars evidence from the first decision from being used in the current decision. *Franklin v. Shalala*, 1994 U.S. Dist. LEXIS 2311, at *5 (S.D. Ala. Feb. 23, 1994). Thus, the ALJ in this case was limited to only the evidence of a disability *since* November 17, 2003, which did not include *any* of Dr. Davis's evaluations.

In the consultative evaluation conducted by Dr. Crouch on April 27, 2004, the Claimant admitted that she had not seen Dr. Davis in two years. (R. 214). Although Dr. Davis was the Claimant's treating physician, his examinations of her should not be considered because of the binding decision of the first ALJ and the fact that the Claimant had not seen Dr. Davis since that decision. Therefore, substantial evidence supports the ALJ's decision to discredit Dr. Davis's examination and to give greater weight to both Dr. Crouch's and Dr. Sparks's assessments of the Claimant.

To the extent medical evidence indicated that the Claimant must elevate her leg at all, the ALJ did consider such elevation in determining Claimant's RFC. Although the ALJ did not specify a height when he assessed Claimant's RFC, he addressed it in his hypothetical to the VE, as the court discusses more fully in Section B below. The ALJ specifically asked the VE if the Claimant's alleged level of elevation (above her heart) would preclude her from working. (R. 307). He answered affirmatively; however, he also stated that jobs were available for Claimant if she had to elevate her leg to about the level of a chair. (R. 308).

No evidence in the record indicates that any physician specified that Claimant's leg must be elevated above her heart. Even if the ALJ had considered Dr. Davis's evaluation of Claimant, Dr. Davis never instructed Claimant to elevate her leg to the level of her heart. (*See* R. 168, 234-38, 241-42). Alternately, even if Dr. Davis had prescribed such a level of elevation, the ALJ

properly disregarded his opinions. Consequently, the ALJ's RFC finding that Claimant can perform a limited range of sedentary work (20 CFR §§ 404.1567 and 416.967) is supported by substantial medical evidence.

**B. Posing a Proper Hypothetical Situation**

The Claimant contends that the ALJ posed an incorrect hypothetical situation to the VE because his questions did not offer any specific finding regarding the Claimant's need to elevate her leg, did not mention the fact that the ALJ found she would have a moderate impairment in concentration, and did not consider the fact that she needs a cane to walk. (R. 9). The Claimant concludes that, because the ALJ did not mention these specific limitations, the VE's testimony could not provide substantial evidence on which to base his decision. (R. 9).

Although the ALJ did not indicate every possible mental or physical functional activity as suggested in Social Security Ruling 96-98p, this omission does not amount to reversible error. *See Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) (finding that the ALJ is not required to use particular phrases or formulations) (citing *McDaniel*, 800 F.2d at 1031). The ALJ is not required to use particular phrases or formulation provided the ALJ evidently applied the statutory and regulatory requirements. *Id*. at 589-90. The ALJ's failure to inquire about other physical or mental functional limitations does not render the hypothetical questions incomplete because the ALJ included several areas of physical and mental functioning to determine the Claimant's RFC; addressed the entire medical record to determine whether Claimant could return to her former work; and referenced limitations in his hypothetical. The ALJ's hypothetical questions directly addressed the issue of the Claimant's need to elevate her leg, and her potential moderate impairment in concentration and occasional use of a cane were both taken into consideration in

determining her RFC. As a result, the ALJ's hypothetical questions were proper and the VE's testimony provided substantial evidence that a significant number of jobs exist which the Claimant was capable of performing.

## C. Full and Fair Development of the Record

The Claimant next contends that the ALJ did not fully and fairly develop the record because he did not obtain additional information regarding her depression prior to his decision. For a claimant to be entitled to Social Security Benefits, the five-step evaluation process is applied to determine whether the standard set forth in 42 U.S.C. § 423(d)(1)(A) is met. *McDaniel*, 800 F.2d at 1030. A claimant is "entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any *medically determinable* physical or mental impairment." *Frazier v. Barnhart*, 437 F. Supp. 2d 1275, 1276 (N.D. Ala. 2006) (emphasis added). In addition, the claimant bears the burden of persuasion through Steps 1 and 2, and the burden shifts to the Commissioner at a later point. *Id*. Because the Claimant has the burden of showing that she is physically or mentally disabled, she must provide substantial evidence to support her allegation of depression. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Small v. Barnhart*, 329 F. Supp. 2d 1272, 1274 (N.D. Ala. 2004).

The ALJ properly decided that the Claimant did not meet her burden at Step 2 because her own testimony is not substantial evidence for her claim of depression. The ALJ's finding that the Claimant's ability to maintain concentration, persistence and pace as moderately limited was not based on her depression. The ALJ concluded that the Claimant would have mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and

13

moderate difficulties in maintaining concentration, persistence, and pace based on the entirety of the Claimant's medical record, which the ALJ discussed thoroughly. (R. 25). Citing *West v. Barnhart*, 300 F. Supp. 2d 1264 (S.D. Fla. 2003), the Claimant alleges that the ALJ had a duty to order a medical examination regarding her depression. However, in *West* the claimant saw a doctor for other reasons and the doctor stated that a psychological exam would have helped him diagnose her symptoms of fatigue. *West*, 300 F. Supp. 2d at 1272. As a result, the claimant in *West* had substantial evidence through the doctor's comment. *Id.*

The ALJ in the current case properly concluded that the Claimant's complaints were not credible because she did not seek medical attention. Although the Claimant does refer to her lack of insurance, she only mentions it in regard to her inability to afford the prescribed medicine for her pain. (R. 145, 158). She does not reference her financial status as a reason for failing to have a psychological evaluation. Since the Claimant did not see a doctor about any symptoms from the time of the previous decision until the present appeal, the ALJ had no reason to order a psychological examination.

**D. Application of the Three-Part Pain Standard**

Finally, the Claimant argues that the ALJ did not properly evaluate her pain symptoms to determine that her impairments could cause her symptoms and that the ALJ did not make a specific finding that her impairment is medically determinable and "*could reasonably be expected to produce [Glenn's] symptoms, such as pain.*" (Cl. Reply Br. 6). The Claimant further claims that the ALJ did not explicitly articulate his reasons for rejecting Claimant's pain, and she challenges the ALJ's evaluation of the three-part pain standard.

The three-part "pain standard" applies when a claimant attempts to establish disability

through his or her own testimony of pain or other subjective components.  The pain standard requires (1) evidence of an underlying medical condition, and (2) *either*: (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition; *or* (b) evidence that the objectively-determined medical condition can be reasonably expected to give rise to the alleged pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Under this pain standard, the ALJ must consider the testimony of the claimant, as well as her alleged limitations on daily activities caused by the impairment(s).  *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).  If the claimant seeks to establish a disability based on her own subjective complaints of pain, the ALJ's decision regarding the claimant's credibility becomes critical to his decision as to whether the claimant is "disabled."  *Walden v. Schwiker*, 674 F.2d 835, 839 (11th Cir. 1982).  Credibility determinations are reserved to the ALJ, subject to the requirement that, in making these decisions, the ALJ clearly articulates his findings.  *McGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1984).

  The testimony of the claimant alone is not sufficient to support a finding of disability based on the claimant's subjective complaints of pain; the ALJ must consider other evidence, such as the medical record and opinions of the treating or consultative physicians.  *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  The ALJ must then articulate the reasons for accepting or rejecting this evidence and must state the weight given to the evidence.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).  Substantial evidence must support such articulation of reasons, or the ALJ must accept the pain testimony of the claimant as true.  *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Furthermore, the ALJ cannot reject a claimant's testimony based solely on his or her own observations or on criteria that objective medical

evidence does not substantiate. *Johns v. Bowen*, 821 F.2d 551, 556-57 (11th Cir. 1987).

The ALJ stated that evidence of an underlying medical condition existed. (R. 26). However, the ALJ stated that the medical evidence neither confirmed the severity of the Claimant's alleged pain, nor could the Claimant's medical condition be expected to give rise to the alleged claim. (R. 26). This court concludes that the ALJ properly considered the medical evidence as a whole. Since the 2003 decision has not been reopened and no new evidence has been submitted, the ALJ properly relied upon the medical evidence available in making his decision. This court also finds that the ALJ considered the Claimant's subjective symptoms and properly rejected them as not credible. Specifically, the ALJ explained his rationale when he listed seven inconsistencies upon which he based his finding that the second part of the pain test is not met:

> 1) the claimant's daily activities, 2) the location, duration, frequency, and intensity of the symptoms, 3) factors that precipitate and aggravate the symptoms, 4) the type, dosage, effectiveness, and side effects of any medications that the claimant takes or has taken to alleviate symptoms; 5) treatment, other than medication, received for relief of symptoms; 6) any measures other than treatment used to relieve symptoms, and 7) other factors concerning the claimant's functional limitations and restrictions due to any symptoms.

(R. 26). For example, the ALJ reviewed the Claimant's daily activities to determine credibility. The Claimant testified that each day she takes care of herself and her children, drives her children to school, and walks around her house without an assistive device. (R. 27). The ALJ properly determined that such activities were inconsistent with the severity of the symptoms that the Claimant alleged, including the unsubstantiated claim that she needs to elevate her leg above heart level.

The ALJ discussed these inconsistencies with the requisite level of specificity to withstand any allegations of error. The ALJ is the sole determiner of credibility. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000) (*citing Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)). Consequently, the court should not disturb a clearly-stated credibility finding unless substantial evidence does not support it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ's assessment of the Claimant's credibility is clearly articulated and corroborated by substantial evidence in the record; therefore, the court will not disturb the ALJ's conclusion that the Claimant's testimony of disabling pain is not credible.

### V. Conclusion

Upon review of the administrative record, and considering all of Claimant's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, the Commissioner's decision is AFFIRMED. A separate order will be entered in accordance with this Memorandum Opinion.

DATED this 10th day of June, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE